Argued July 7, reversed with instructions September 6, 1961

In the Matter of the Estate of
## JOHN EHRY, Deceased
EHRY et al v. BLACKFORD et al
364 P. 2d 626

*James W. Walton,* Corvallis, argued the cause for appellant. With him on the briefs were Ringo and Walton, Corvallis.

*Mark Weatherford,* Albany, argued the cause for respondents. With him on the brief were Weatherford & Thompson, Albany.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin and Lusk, Justices.

SLOAN, J.

A will contest. Plaintiffs, contestants, were teen-age sons of deceased; his only heirs at law. Defendant Julia Lemke, now Delaney, was the sole beneficiary of the challenged will; defendant Blackford, the named executor. It was alleged that deceased, John Ehry, was not mentally competent to execute the will and that he acted under the improper influence of defendant Lemke. The trial court found for plaintiffs, defendant Lemke appeals. The word "defendant" in this opinion refers to Julia Lemke only.

Prior to his final illness deceased had operated an auction sales barn near Corvallis. In 1958 he was divorced from his wife. Sometime later defendant was also divorced from her husband. Thereafter she supported herself by doing housework for various people in Corvallis. After deceased was divorced from his wife deceased hired defendant to enter his home as a housekeeper. Not long after she entered the home deceased became afflicted with his fatal illness of cancer of the lung. He entered the hospital in January of 1960. Treatment gave him temporary relief and he was discharged in late February. He was again admitted to the hospital on March 19, 1960, and died about a month later.

In addition to the cancer he developed other ailments which caused an edema in the brain cavity. The latter affliction caused periods of semi-consciousness and much pain. His condition was characterized by the attending physicians and nurses as "confused". At other times his condition was recorded in the hospital records as "alert". One of the attending physicians, who was a witness to the will, testified that

when deceased was in a confused state he did not recognize people or understand what was going on about him. Otherwise, although physically weakened, his mental condition was rational. The doctor testified that his condition could and did alter from day to day. The doctor knew he was dying and presumably the deceased was aware of it.

On April 5, 1960, deceased asked one of his attending doctors to call an attorney so that he could prepare a will. The attorney came to the hospital, talked with deceased to learn his desires, returned to his office where he prepared the will and then returned to the hospital to have it executed.

The attorney asked the doctor and two employees of the hospital to act as witnesses. He employed a third witness because he was aware that deceased was unable to write and would be compelled to sign by a mark. These witnesses, as well as the attorney, testified that the will was read to deceased, prior to execution, item by item and that deceased indicated his approval of each provision contained in the will. The will was a simple one. It specifically disinherited the three sons (plaintiffs) and gave his estate to defendant. When that portion of the will was read to him he was specifically asked if that was his intention. He answered in the affirmative.

Each of the witnesses testified that he was alert and gave every impression of understanding what he was doing. The testimony of the attending physician was entitled to particular weight. He was cross-examined in great detail and fully explained the nature of the ailments deceased suffered and why they would not necessarily render him incompetent. The doctor expressed the opinion that deceased was fully competent to know of his property, the persons

who were the natural objects of his bounty and the disposition he wanted to make of his property.

■■ Plaintiffs' case was largely made by cross-examination of defendant's witnesses. Although this was done with considerable care it did not materially impair the credibility of those witnesses. There was simply no evidence to show that at the moment the will was executed deceased was incompetent to exercise that right. 1 Jaureguy and Love, Oregon Probate Law and Practice, 1958, p 274, et seq.; 1 Page on Wills (Bowe-Parker Rev, 1960) § 12.21; *In re Estate of Verd Hill,* 1953, 198 Or 307, 318, 256 P2d 735. The evidence is supported by the presumption of competence which attends a properly executed will. *In re Shanks' Estate,* 1942, 168 Or 650, 662, 126 P2d 504.

■ Nor can we sustain the claim of undue influence. The evidence creates nothing more than suspicion. In this respect plaintiffs bore the burden of proof. *In re Sturtevant's Estate,* 1919, 92 Or 269, 292, 178 P 192, 180 P 595. We must hold that they failed to meet that burden.

We are compelled to reverse the case and remand it with instructions to admit the will to probate.